861-15    862-15

NO. _____

ORIGINAL

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 27 2015

Abel Acosta, Clerk

STEVEN ERIC BREED
Petitioner

v.

THE STATE OF TEXAS
Respondent

Petition is in Appeal from Cause No. F12-00533-V and F12-51946-V in the 292nd District Court of Dallas County, Texas, Honorable Lawrence B. Mitchell, Judge Presiding, and No. 13-13-00382-CR & 13-13-00383-CR in the Court of Appeals for the Thirteenth District of Texas at Corpus Christi.

PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

AUG 27 2015

Abel Acosta, Clerk

Steven Eric Breed, Pro Se
TDCJ 1859585
Huntsville Unit
815 12th Street
Huntsville, TX 77348

STEVEN ERIC BREED

ORAL ARGUMENTS NOT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................i

TABLE OF AUTHORITIES.................................................ii

STATEMENT REGARDING ORAL ARGUMENT.................................... 1

STATEMENT OF THE CASE................................................ 1

STATEMENT OF PROCEDURAL HISTORY .................................... 1

GROUNDS FOR REVIEW.................................................. 1

    1. The Thirteenth Court of Appeals erred when it found there was sufficient evidence to uphold Petitioner's conviction.

    2. The Thirteenth Court of Appeals erred when it found there was no error in the admission of extranesous act evidence.

REASONS FOR REVIEW .................................................1

ARGUMENTS AND AUTHORITIES..........................................2

PRAYER FOR RELIEF.................................................10

CERTIFICATE OF SERVICE...........................................10

## TABLE OF AUTHORITIES

CASE               Page

Britton v State, 145 SW2d 878 (TexCrApp 1940). . . . . . . . . . 5

Brooks v State, 323 SW3d 893 (TxCrApp 2010). . . . . . . . . . . 2

Burden v State, 55 SW3d 608 (TxCrApp 2001) . . . . . . . . . . 2

Casey v State, 215 SW3d 870 (TxCrApp 2007). . . . . . . . . . 7

Daggett v State, 187 SW#d 444 (TxCrApp 2005) . . . . . . . . . 7

Eppinger v State, 800 SW2d 652 (TxApp-Austin 1990) . . . . . . .3,5

Erazo v State, 144 SW3d 487 (TxCrApp 2004) . . . . . . . . . . 8

Gallo v State, 239 SW3d 757 (TxCrApp 2007) . . . . . . . . . . 7

Jackson v Virginia, 443 US 307 (1979). . . . . . . . . . . . . 2

Lorea v State, 14 SW3d 464 (TxApp-Dallas 2000) . . . . . . . .3,4,5

Page v State, 213 SW3d 332 (TxCrApp 2006). . . . . . . . . . . 7

Taylor v U.S., 110 S.Ct. 2143 (1990) . . . . . . . . . . . . .4,8

Tommen v State, 505 SW3d 900 (TxCrApp 1974) . . . . . . . . . .5,8

Trevino v State, 245 SW3d 788 (txCrApp 1952) . . . . . . . . . .5,6

Villanueva v State, 711 SW2 739 (TxCrApp 1986) . . . . . . . . 5

Young v State, 283 SW3d 854 (TxCrApp 2009) . . . . . . . . . . 8

## STATUTES AND RULES

Texas Penal Code  §1.07 (a)(9) . . . . . . . . . . . . . . . .3,5

Texas Penal Code  §2.01. . . . . . . . . . . . . . . . . . . . 3

Texas Penal Code  §30.02(a)(3) . . . . . . . . . . . . . . . . 3

Texas Penal Code  §32.02 . . . . . . . . . . . . . . . . . . . 1

Texas Rules of Appellate Procedure Rule 41.3 . . . . . . . . . 3

Texas Rules of Appellate Procedure Rule 66.3 . . . . . . . . . 1

Texas Rules of Evidence 403 . . . . . . . . . . . . . . . .6,7,8,9

Texas Rules of Evidence 404(b) . . . . . . . . . . . . . . . 6,9

## STATEMENT REGARDING ORAL ARGUMENTS

Breed does not request oral arguments.

## STATEMENT OF THE CASE

In two separate indictments, Petitioner was charged with burglary of a habitation in violation of Texas Penal Code § 32.02. Petitioner pled not guilty to these offenses. A jury convicted Petitioner of both offenses. The Trial Court subsequently assessed punishment at 16 years imprisonment in each case. The judgments were entered on May 21, 2013. Petitioner filed timely notice of appeal in both cases.

## STATEMENT OF PROCEDURAL HISTORY

The opinion of the Thirteenth Court of Appeals affirming the Trial Court in both cause numbers was handed down on June 11, 2015. Petitioner's Petition for Discretionary Review is due on September 11, 2015.

## GROUNDS FOR REVIEW

1. The Thirteenth Court of Appeals erred when it found there was sufficient evidence to uphold Petitioner's conviction.

2. The Thirteenth Court of Appeals erred when it found there was no error in the admission of extraneous act evidence.

## REASONS FOR REVIEW

1. The decision in these cases conflicts with decisions rendered by the Court of Criminal Appeals and the U. S. Supreme Court.

2. The decision below conflicts with decisions of other Courts of Appeal.

3. The decision of the Thirteenth Court of Appeals so far deviates from the fair administration of justice that Court of Criminal Appeals correction is required. See Tx.R.App.Proc.66.3.

1

# ARGUMENTS AND AUTHORITIES

## 1. THE THIRTEENTH COURT OF APPEALS ERRED WHEN IT FOUND THERE WAS SUFFICIENT EVIDENCE TO UPHOLD PETITIONER'S CONVICTION:

### FACTS

The facts here are undisputed. In the first alleged offense, Breed (Petitioner) contacted a Realtor and represented he was in the market to purchase a house. He toured a home that was for sale by Rebecca Bell. While in this home, Breed revisited a part of the home and stole jewelry that police later recovered from a pawn shop where Breed had pawned same, all while invited inside home by Bell.

In the second alleged offense (both offenses were tried at the same trial) Breed went to an open house and stole jewelry that was later recovered by police in Gainesville, TX. There was video depicting Breed pawning this jewelry. Some mere speculation existed that while the open house was still being conducted Breed reentered the home of Ms. Locke, whose home was being held open by her Realtor. During the alleged reentry, the home owner's jewelry was stolen.

### A. Standard of Review:

When reviewing a claim of insufficiency of the evidence to uphold a conviction, the appellate court must determine, after considering all the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v Virginia, 443 US 307 (1979). Burden v State, 55 SW3d 608, 612 (TxCrApp 2001).** The Jackson v Virginia legal-sufficiency standard is the standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of the criminal offense that the State is required to prove beyond a reasonable doubt. **Brooks v State, 323 SW3d 893, 894-95 (TxCrApp 2010)**

2

**B. DISCUSSION-Insufficiency of Evidence to Find Petitioner Guilty of Burglary.**

The State is required to prove every element of an offense beyond a reasonable doubt. Tx. P. C. §2.01 (2010), A person commits the offense of burglary if, without the effective consent of the owner, the person enters a building or habitation, and commits or attempts to commit a felony, theft, or assault. Tx.P.C. §30.02(a)(3).[1] Consent means assent in fact, whether express or apparent.[2] There was no circumstantial evidence that Breed was in the house of Locke a second time without the presence of Locke or her Realtor, as the opinion at page 5 contemplates. It was an open house, and it was the Realtor that stated she heard a noise. She stated nothing was amiss after an investigation of this noise. Once again, while the house was open to the public. At the Bell property, Breed was invited in and while allowed to view the house he stole items of jewelry.

There simply was no evidence of one element of the offense, and that was never proven: **"without the effective consent of the owner."** He was invited in the Bell home and the Locke home, which was an open house. Thus, he had the effective consent of each owner. Moreover, in **Lorea v State**, **14 SW3d 464, 468 (TxApp - Dallas 2000, no pet.)**, the Fifth District Court clearly indicated that an "open house" held for purposes of a sale make the residence publicly accessible. This was the precedents of the Court that transferred this appeal. The Thirteenth Court of Appeals reaching a decision that is inapposite is a violation of Texas Rules of Appellate Procedure Rule 41.3. The decision of the lower Court is in direct conflict with **Lorea, supra.** This Court should review this decision.

What the State proved at trial was simple theft. There was no breaking or entering that would constitute a burglary. Any theory of the case one would consider would not be burglary.

---

[1] Breed was charged with only the third manner of committing the offense of burglary and not any other.
[2] See Tx.P.C. §1.07(a)(9); see **Eppinger v State**, **800 SW2d 652, 653 (TxApp - Austin 1990, pet. refd.)**

3

For instance, the lower Court hypothesized that entry under false pretenses would be burglary. This would mean that anyone that enters Wal-Mart and shoplifts a candy bar would be guilty of burglary, as they entered the store for the express purpose of committing theft and not to purchase anything. It would produce the absurd results that if a person enters a bank and forges a financial instrument, they would be guilty of burglary. They had no intention of legally obtaining funds from the bank. Say a person is legitimately seeking a home to buy and they steal a knick knack from a house they viewed. Would that be burglary? No, it is definitely not, and Breed is not guilty of burglary in the instant case as well. Thus, solely based on the evidence adduced at trial, an essential element of the offense was not proven. Breed did not enter these dwellings without the effective consent of the owners, period! If the opinion of the Thirteenth Court of Appeals is allowed to stand as is, then the lower Court has redefined what constitutes burglary far from any decision thus far rendered.

Black's Law Dictionary gets their definition of generic burglary from **Taylor v U.S., 110 S. Ct. 2143, 2158 (1990),** defining burglary as "An unlawful or unprivileged entry into, or remaining in, a building or structure to commit a crime." The U.S. Supreme Court does not define invited entry into a building as being a burglary. Privilege is defined as: "A right or immunity for or against a private person granted as an advantage or favor, especially to some and not others." Breed was granted the privilege to enter these homes. This is not in dispute. Thus, he could not have committed the essential element of the offense of not having consent to enter. He was given consent to enter the premises, most assuredly so in the case of an open house. This could also be extended to the other house that he toured with the owner and the Realtor. Both houses were for sale. This requires a person to open their homes to strangers for potentially purchasing the home and making it publically accessible, as was declared in **Lorea, supra.** Consent was both express and implied in the instant case

4

**Eppinger v State, 800 SW2d 652, 653-54 (Tx App-Austin 1990):** "Consent means assent in fact, whether express or apparent." TxP.C. §1.07 (a)(9). **Trevino**[3] and **Thommen**[4] were prosecuted under the 1925 P.C. and were effectively overruled by the adoption of the current code. The State cites no case applying **Trevino** in a prosecution, under either current or former code, for burglary of a habitation...Foss did not intend to give appellant consent to steal when he permitted him to enter his apartment...but neither did victims in **Britton**[5] and **Villanueva**[6] in which the owner's consent to enter was held to preclude convictions for burglary." The decision in the lower Court relied heavily on **Trevino**, but that case was overruled and has never been applied to burglary of a habitation. The reliance on this overruled case was for the proposition that when one enters for the purpose of committing a theft consent is not given effectively. Thus, in the case at bar, a person or persons was present to give consent and the lower Court did not consider this factor at all in rendering their decision. **Trevino** was a church where no person (s) were present to give such consent. Here persons were present and gave consent. Thus, **Trevino** is wholly inapposite and has no place in fashioning a decision in this case whatsoever. The law and facts have no similarity to this case. Intent to commit theft does not negate owner's consent.

The issue in this case is whether there is sufficient evidence to support the jury's finding that Mr. Breed's entry into the habitations was without consent of the owners. The totality of the evidence adduced at trial clearly indicates that Mr. Breed had consent and did not enter the habitations without consent as required to uphold his convictions for these offenses. As a result, there was not just insufficient evidence but no evidence to sustain the convictions here, and the

---

[3] Trevino v State, 254 SW2d 788 (TxCrApp 1952).
[4] Tommen v State, 505 SW2d 900 (TexCrApp 1974).
[5] Britton v State, 145 SW2d 878 (Tex CrApp 1940).
[6] Villanueva v State, 711 SW2d 739 (Texapp. 1986)

5

Thirteenth Court of Appeals erred when it failed to reverse Breed's convictions. He is only guilty of the lesser offense of theft, a State Jail Felony.

## 2. THE THIRTEENTH COURT OF APPEALS ERRED WHEN IT FOUND THERE WAS NO ERROR IN ADMISSION OF EXTRANEOUS ACT EVIDENCE.

### FACTS

The facts surrounding the admission of the extraneous act evidence are also undisputed. During the guilt/innocence stage of trial, before the State had finished its case in chief, the prosecutor informed the Court that it wished to present evidence of unindicted extraneous offenses that were allegedly "contextual" in nature. RR4, pp 136-39. Defense Counsel objected on the basis the evidence did not clear the 404 hurdle and also 403. See Texas Rules of Evidence Rules 403 and 404(b). At this hearing outside the presence of the jury, the Court excused Defense Counsel from re-urging objections. All at RR5 pp 7-8. The Court overruled the objections and the jury ultimately heard evidence: 1) That Breed has been found in the closet of Ms. Connell's home on March 8, 2012, near where she kept her jewelry; and 2) That appellant had been arrested in Frisco in possession of a homeowner's jewelry after Breed had toured the house as a potential home buyer. RR5, pp 24-25; 36-37. A limiting instruction was given at the request of Defense Counsel. CR1, 78; CR2, 69; RR6, p. 19.

### A. Standard of Review

The admission of evidence is reviewed for an abuse of discretion. **Gallo v State, 239 SW3d 757, 762 (TxCrApp 2007).** Generally, evidence of extraneous offenses may not be used against the accused in a criminal trial...While such evidence will almost always have probative value, it forces the defendant to defend himself against uncharged crimes as well as the charged offense, and encourages the jury to convict a defendant based on bad character rather than proof

of the specific crime charged. **Daggett v State, 187 SW3d 444, 450-451 (TxCrApp 2005)** Extraneous-offense evidence is admissible only if the evidence satisfies a two-pronged test: 1) the extraneous-offense evidence must be relevant to a fact of consequence in the case aside from its tendency to show action in conformity with character; and 2) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. **Page v State, 213 SW3d 332, 336 (TxCrApp 2006).** Unfair prejudice may result from the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant. **Casey v State, 215 SW3d 870, 883 (TxCrApp 2007).**

Rule 403 of the Texas Rules of Evidence states that evidence, although relevant, may be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury...Four factors are to be considered under Rule 403: 1) the probative value of the evidence; 2) the potential to impress the jury in some irrational, yet indelible, way; 3) the time needed to develop the evidence; and 4) the proponents needed for the evidence. **Erazo v State, 144 SW3d 487, 489 (TxCrApp 2004).** In evaluating the need of the evidence this Court should consider: 1) whether the proponent has other available evidence to establish the fact of consequence that the evidence is relevant to show: 2) the strength of the other evidence; and 3) whether the fact of consequence is related to the issue in dispute. **Erazo Id at 495-96.** "It is only where there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 bars it admission." **Young v State 283 SW3d 854, 877 (TxCrApp 2009).**

## B. DISCUSSION - Error in the Admission of Extraneous Act Evidence.

Here, the Lower Court of Appeals has erred in the analysis of this issue by determining the extraneous act evidence was admissible based on the erroneous conclusion that intent was

needed to negate the effective consent obviously given to Mr. Breed by both owners of the properties in question here. Breed was given implied consent and express consent, and the properties were accessible to the public under the case law previously cited herein. The Thirteenth Court of Appeals reliance on cases that are inapposite, and two, **Thommen v State, 505 SW2d 900 (TxCrApp 1974) and <u>Trevino v State</u>, 254 SW2d 788 (TxCrApp 1952)**, both of which have been overruled, are the salient factor in the severely defective opinion relating to the admission of the extraneous act evidence. Opinion at page 9: "As we previously discussed, the State, in order to prove burglary, necessarily needed to prove entry without the effective consent of the owner...The material fact necessary to prove a lack of consent was intent to commit theft." This was not the case in any of the decisions quoted by the Lower Court of Appeals. All the cases quoted by the Lower Court involved businesses and no one was present. Thus, the opinion of the Lower Court of Appeals concerning the admission of evidence under Rule 404(b) cannot stand because it is seriously flawed and not a reflection of the laws of the Texas Court of Criminal Appeals or the other District Courts of Appeals.

The Thirteenth Court of Appeals decision under Rule 403 fails for basically the same reasons as under Rule 404(b). It was undisputed that the extraneous act evidence was prejudicial. The Lower Court's Opinion at 11: "On the other hand, this evidence was necessary to establish intent." There was no need to establish intent because intent does not negate the obvious effective consent of the owners here. Thus, the probative value of the extraneous act evidence was outweighed by its substantial prejudicial effect.

8

## THE COURT OF APPEAL'S DECISION BELOW

**I.    INSUFFICIENCY OF EVIDENCE TO FIND BREED GUILTY OF THE INDICTED   OFFENSE:**

In its opinion, the Thirteenth Court of Appeals incorrectly held that there was sufficient evidence to sustain Breed's conviction, as there was no evidence to conclude he entered the premises of the two properties without the effective consent of the owners.  As noted above, there was insufficient evidence to uphold Breed's conviction.  As a result, the Thirteenth Court of Appeals incorrectly held there was sufficient evidence to uphold Breed's conviction.  This error requires reversal of Breed's conviction.

**II.    THE TRIAL COURT ERRED IN ADMITTING EXTRANEOUS EVIDENCE:**

In its opinion, the Thirteenth Court of Appeals incorrectly held that the Trial Court did not abuse its discretion in admitting the extraneous act evidence.  This error harmed Breed and requires reversal of Breed's conviction.

Because of these factors, the affirmance by the Lower Court was error.

9

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Breed respectfully prays this Court grant

discretionary review and allow each party to fully brief and argue the issues before the Court of

Criminal Appeals and the upon reviewing the judgment entered below, that this Court reverse

this cause and remand for a new trial.

Respectfully submitted,

Date: _August 3, 2015_

Steven E. Breed, Pro Se

## CERTIFICATE OF SERVICE

I, Steven Breed, do hereby declare that on the date indicated below a true and correct

copy of this Petition for Discretionary Review was mailed to the Dallas County District Attorney

and the State Prosecuting Attorney by first class U. S. Mail, postage prepaid.

Executed this _3rd_ day of _August_____, 2015.

# APPENDIX A
## OPINION OF THE THIRTEENTH COURT OF APPEALS



# NUMBERS 13-13-00382-CR and 13-13-00383-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

STEVEN ERIC BREED,                                   **Appellant,**

**v.**

THE STATE OF TEXAS,                                   **Appellee.**

## On appeal from the 292nd District Court
## of Dallas County, Texas.

# MEMORANDUM OPINION

## Before Justices Benavides, Perkes, and Longoria
## Memorandum Opinion by Justice Perkes

Appellant Steven Eric Breed was indicted for two separate second-degree felony

offenses of burglary of a habitation.[1] *See* TEX. PENAL CODE ANN. § 30.02 (West, Westlaw

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, the two appeals were transferred to this Court from the Fifth Court of Appeals in Dallas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.). Appellate Cause No. 13-13-00382-CR is the appeal from trial court cause number F-1200533-V. Appellate Cause No. 13-13-00383-CR is the appeal from trial court cause number F-1251946-V.

through 2013 3d C.S.). After a jury found appellant guilty for each offense, the trial court assessed punishment at sixteen years' imprisonment for each offense and ordered the sentences to run concurrently. By four issues, appellant contends: (1) the evidence is insufficient to support appellant's conviction for burglary of a habitation in Cause No. F-1251946-V; (2) the trial court erred by admitting evidence of two unindicted, extraneous offenses during the guilt/innocence phase of the joint trial; (3) the limiting instruction regarding the use of extraneous offense testimony is defective; and (4) the evidence is insufficient to support the trial court's order for appellant to pay court costs in Cause No. F-1251946-V.[2] We affirm.

## I. BACKGROUND

The State alleged that appellant, while posing as a homebuyer, stole jewelry from two different homes in the Dallas area.

To accomplish the first burglary, appellant contacted a realtor and represented to her that he was relocating from Houston to Dallas. He then made appointments to view several homes, the first of which was owned by Rebecca Bell. Appellant and the realtor entered Bell's home and toured the house with Bell accompanying. After the initial showing, appellant excused himself from Bell and the realtor to revisit parts of the house alone. Appellant was gone for several minutes and returned with his hands in his pockets. Several days later, as Bell was preparing for church, she noticed that some of her jewelry was missing and that the contents of her jewelry box was in disarray. Bell

---

[2] Inasmuch as both convictions arose from a single trial, we consolidated the two appeals for purposes of this opinion.

2

contacted the police, who later recovered one piece of the missing jewelry, a ring, from a pawnshop. The police subsequently learned that appellant had pawned the ring. Appellant was indicted for this offense under cause number F-1200533-V.

The second burglary occurred nine days later at Kathy Lock's open house. Lock left her home shortly after the commencement of the open house and she saw appellant enter her home and begin looking at it with her realtor. Appellant told Lock's realtor that he was from Houston, was recently widowed, and was in the market for a house in Dallas for himself and his five children. The realtor walked appellant through the house and suggested that appellant tour another house that she knew was open in the area. The realtor saw nothing unusual occur as she walked through the home with appellant; however, as she was showing the house to another group of people, she thought she heard the front door open. When the realtor went to investigate, she did not see anyone. The next day, Lock noticed that she was missing her wedding ring, a Rolex watch, a gold necklace with an emerald pendant, and some costume jewelry, all of which had been placed in a built-in shelf in her closet. Lock reported the theft to the police, who later obtained a surveillance video purporting to show appellant pawning Lock's wedding ring at a pawnshop in Gainesville, Texas. Appellant was indicted for this offense under cause number F-1251946-V.

Appellant was tried on both indictments in a single trial. During the guilt/innocence phase of the trial, the jury heard about two additional "offenses" appellant committed that were similar to the offenses for which he was being tried.

3

The first offense occurred early in 2012 when appellant was touring a home that was listed for sale. The seller testified that she gave appellant an overview of the home and afterwards appellant toured the house by himself. The seller observed appellant in the master bedroom appearing to rummage through her jewelry armoire. Interrupted by the seller, appellant quickly left the home. No jewelry was reported missing.

The second offense stemmed from a "sting operation" conducted in July 2010 by the Frisco, Texas police department. Appellant was a suspect in a jewelry theft investigation. The realtor contacted the police detective and told him that appellant had made an appointment to tour a home listed for sale. The detective installed a remotely operated camera in the master bedroom closet of the home which recorded appellant stealing jewelry. Appellant was arrested as he left the home.

## II. EVIDENTIARY CHALLENGES

By his first issue, appellant argues that the evidence is insufficient to support his conviction for burglary in cause number F-1251946-V. Specifically, appellant argues the State failed to prove that appellant's entry into Kathy Lock's home was non-consensual.

### A. Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.).

4

"The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc) (citing *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)). Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).

## B. Discussion

Appellant argues that by entering Lock's home during an open house, he entered with the effective consent of the owner, thus negating an essential element of burglary. We disagree.

"A person commits the offense of burglary if, without the effective consent of the owner, the person enters a building or habitation, and commits or attempts to commit a felony, theft, or an assault." TEX. PEN. CODE ANN. § 30.02(a)(3).[3] "Consent" means assent in fact, whether express or apparent. *Id.* § 1.07(a)(9); *see Eppinger v. State*, 800 S.W.2d 652, 653 (Tex. App.—Austin 1990, pet ref'd).

It is undisputed appellant entered Lock's home during an open house, introduced himself using an alias, and toured the home with Lock's realtor. There is circumstantial evidence that he subsequently re-entered the home, without the realtor's knowledge, presence, and consent, and stole property from Lock's home.

---

[3] Although the statute includes multiple manners of committing an offense, appellant was only indicted under the third manner of committing an offense. TEX. PEN. CODE ANN. § 30.02(a)(3).

5

In *Trevino v. State*, the defendant entered a church for the purpose of committing a theft. *See* 254 S.W.2d 788, 789 (Tex. Crim. App. 1952). The court, in affirming the conviction, stated that "we see no distinction, insofar as the law of burglary is concerned, between a church, into which the public has consent to enter for the purpose of meditation and prayer, and a place of business, into which the public has consent during business hours to enter for the purpose of transacting business." *Id.* Where the State has other evidence of intent to commit a felony or the crime of theft, prior to entry, and an entry and breaking is shown, then the offense of burglary of a place of business during business hours or a church has been established, notwithstanding an express or implied consent to enter for lawful purposes. *Id.* An open house is similar to a church or business in that the public has consent to enter for the purpose of evaluating the home. *See Loera v. State*, 14 S.W.3d 464, 468 (Tex. App.—Dallas 2000, no pet.) (explaining that residential "open house" held for purposes of a sale makes residence publicly accessible).

The State produced evidence of appellant's intent to commit theft prior to entering Lock's home. A rational jury could deduce from the testimony that appellant entered Lock's house twice. The first time was to tour the home with the realtor—or as a jury could rationally infer, to "case" the home. The second entry allowed appellant the opportunity to take Lock's property. The realtor testified that after giving appellant a tour of the home, she heard the front door open, went to investigate, and inquired whether anyone had entered. A rational jury could infer that appellant did not re-enter the home for any purpose related to the sale of the home, and instead made a surreptitious entry for the express purpose of stealing Lock's property.

As the Texas Supreme Court noted in *Trevino*, "[i]t would be an impeachment of the common sense of mankind to say that a thief who enters a store with intent to steal does so with the owner's consent or upon his invitation." *Trevino*, 254 S.W.2d at 789. So too is it inconceivable that Lock would have extended appellant the invitation to enter her home during an open house so that he could steal from her. Consent given to enter for one purpose does not give consent to enter for all purposes. *See In re D.J.H.*, 186 S.W.3d 163, 165 (Tex. App.—Fort Worth 2006, pet. denied) (holding that juvenile did not have express or apparent consent to re-enter residence) (mem. op., not designated for publication); *see also Griego v. State*, No. 07-08-00130-CR, 2010 WL 1286464, *2 (Tex. App.—Amarillo Apr. 5, 2010, no pet.) (mem. op., not designated for publication) (holding that permission for appellant to enter on pretense of returning borrowed money did not create effective consent in burglary conviction). The evidence supports a rational jury inference sufficient to establish a lack of effective consent. We overrule appellant's first issue.

## III. EXTRANEOUS OFFENSES

By his second issue, appellant complains that the trial court erred by admitting evidence of two unindicted, extraneous offenses during the guilt/innocence phase of the trial. Appellant argues the extraneous offense evidence was inadmissible under rules 403 and 404(b) of the Texas Rules of Evidence. *See* TEX. R. EVID. 403, 404(b).

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (citing *Burden v.*

7

*State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001)); *see Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). We will not reverse the trial court's ruling unless the ruling falls outside the zone of reasonable disagreement. *Torres*, 71 S.W.3d at 760; *see Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). In applying the abuse of discretion standard, we may not reverse a trial court's admissibility decision solely because we disagree with it. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## B. Discussion

### 1. Rule 404(b)

Rule 404(b) of the Texas Rules of Evidence states that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. TEX. R. EVID. 404(b). The rule, however, allows such evidence to be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Under Rule 404(b), extraneous-offense evidence may be admissible only if it tends to prove a material fact in the State's case, apart from its tendency to demonstrate an accused's general propensity for committing criminal acts. *Owens v. State*, 827 S.W.2d 911, 914 (Tex. Crim. App. 1992) (en banc).

Appellant argues that he was charged under section 30.02(a)(3), which does not require a defendant to have entered a habitation with the intent of committing theft.

8

Appellant further argues that since neither the State's case, nor the defensive strategy, placed intent at issue, the State did not need to introduce the extraneous offenses to prove intent. We disagree with appellant.

Appellant argued during the trial that the Lock burglary was committed when the residence was open to the public thereby giving appellant consent to enter and thereby reducing the crime of burglary to theft. As we previously discussed, the State, in order to prove burglary, necessarily needed to prove entry without the effective consent of the owner. *See* TEX. PEN. CODE ANN. § 30.02. The material fact necessary to prove a lack of effective consent was intent to commit theft prior to entry. *See Trevino*, 254 S.W.2d at 789; *see also Thommen v. State*, 505 S.W.2d 900, 902–03 (Tex. Crim. App. 1974) (citing *Trevino*, 254 S.W.2d at 788 (holding defendant entered store for purpose of committing theft)); *Gonzales v. State*, 50 S.W. 1018 (Tex. Crim. App. 1899) (holding same). We agree with the trial court that the extraneous offenses were admissible under rule 404(b). *See* TEX. R. EVID. 404(b).

### 2. Rule 403

Rule 403 of the Texas Rules of Evidence states that evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403. In reviewing Rule 403 objections, we consider the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence.

9

*Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004); *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1990) (en banc). In evaluating the need for the evidence, we must consider: (1) whether the proponent has other available evidence to establish the fact of consequence that the evidence is relevant to show; (2) the strength of the other evidence; and (3) whether the fact of consequence is related to an issue that is in dispute. *Erazo*, 144 S.W.3d at 495–96; *Montgomery*, 810 S.W.2d at 390. "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010); *Montgomery*, 810 S.W.2d at 389. "It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 bars its admission." *Young v. State*, 283 S.W.3d 854, 877 (Tex. Crim. App. 2009).

We consider the evidence highly probative of intent. *See Erazo*, 144 S.W.3d at 489 (identifying probative value as first factor of Rule 403 review); *Montgomery*, 810 S.W.2d at 389–90 (same). We appreciate the potential impact this particular evidence could have on the jury. "All testimony and physical evidence are likely [to] be prejudicial to one party or the other." *Davis*, 329 S.W.3d at 806. Given the nature of this evidence, the potential for impact could not be minimized, and the State took significant time developing the evidence by presenting witnesses and exhibits. *See Erazo*, 144 S.W.3d at 489 (holding potential to impress jury and time needed to develop evidence are two necessary factors of Rule 403 analysis); *Montgomery*, 810 S.W.2d at 390 (same).

On the other hand, this evidence was necessary to establish intent. *See Erazo,* 144 S.W.3d at 489 (last factor is proponent's need for evidence); *Montgomery,* 810 S.W.2d at 390 (same). Since the defense argued that, in the Bell burglary, appellant purchased the stolen property from the realtor, appellant's intent prior to entry was an issue of dispute. *See Erazo,* 144 S.W.3d at 495–96 (discussing three factors for evaluating need for evidence); *Montgomery,* 810 S.W.2d at 390 (same).

We conclude that the State's need for the extraneous-act evidence was high and hold that the probative value of the evidence was not substantially outweighed by its prejudicial effect. *See* TEX. R. EVID. 403; *Young* 283 S.W.3d at 877 (only clear disparity between prejudice and probative value warrants exclusion under Rule 403). The trial court's ruling on the admissibility of the extraneous-act evidence fell within the zone of reasonable disagreement. *See De La Paz,* 279 S.W.3d at 343. We overrule appellant's second issue.

## IV. LIMITING INSTRUCTION

By his third issue, appellant contends that the jury charge is so defective that it constitutes egregious harm. Appellant asserts that the limiting instruction on the extraneous offense evidence is defective because: (1) it did not condition the jury's consideration of the extraneous offense evidence on the jury's first deciding that appellant committed the extraneous offenses beyond a reasonable doubt; and (2) it failed to instruct the jury on how to consider the extraneous-offense evidence if the jury found, beyond a reasonable doubt, that appellant had committed the extraneous offenses.

11

Limiting instructions are governed by Rule 105 of the Texas Rules of Evidence. Rule 105 states that:

> "[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal."

TEX. R. EVID. 105. A request for a limiting instruction must be made at the admission of the evidence. *Hammock v. State*, 46 S.W.3d 889, 893 (Tex. Crim. App. 2001). If the jury is required to consider evidence in a limited manner, then it must do so from the moment the evidence is admitted. *Id.* at 894. Allowing the jury to consider evidence for all purposes and then telling them to consider that same evidence for a limited purpose only is asking a jury to do the impossible. *Id.* If a limiting instruction is to be given, it must be when the evidence is admitted to be effective. *Id.*

Although appellant properly objected to the introduction of the extraneous offense testimony, he did not request a limiting instruction. The first opportunity to request a limiting instruction on the extraneous offense testimony would have been during the hearing outside the presence of the jury where the trial court ruled on the admissibility of the extraneous offense evidence. Once the trial court overruled appellant's objections to the extraneous offense evidence and identified the purpose of admissibility, it was apparent that a limiting instruction was proper. Because appellant did not request a limiting instruction at the first opportunity, the evidence was admitted for all purposes. *Id.* at 895. Therefore, a limiting instruction on the evidence was not within the law applicable to the case, and the trial court was not required to include a limiting instruction in the

12

charge to the jury. *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 36.14. Since the trial court was not required to include a limiting instruction, it follows that including such an instruction does not constitute error. *See id.; Irielle v. State,* 441 S.W.3d 868, 879–80 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (concluding trial court did not err by giving limiting instruction that failed to track language of Rule 404(b) when defendant never requested limiting instruction).

Even if the trial court erred in giving a limiting instruction in the jury charge, the trial court's error would be reviewed for a showing of egregious harm because appellant never objected to the limiting instruction. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). Egregious harm occurs when the error is so fundamental as to deprive the defendant of a fair and impartial trial. *Beam v. State*, 447 S.W.3d 401, 407 (Tex. App.—Houston [14th Dist.] 2014, no pet.). This is a difficult standard to prove, and such a determination must be done on a case-by-case basis. *Id.* When deciding whether appellant suffered egregious harm, we review the entire jury charge, the state of the evidence including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id.* The harm must be actual, not merely theoretical. *Id.* Egregiously harmful errors are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *Id.*

The limiting instruction stated that "you may not consider such evidence, for any purpose other than to determine 'intent,' if any, unless you find and believe beyond a

13

reasonable doubt that the defendant committed such offenses or bad acts, if any." Appellant argues the limiting instruction failed to tell the jury how to use the extraneous offense evidence if the jury found, beyond a reasonable doubt, that appellant committed the extraneous offenses. We disagree with appellant's contention. The plain language of the instruction conditions the jury's consideration of the extraneous offense evidence on the jury's finding beyond a reasonable doubt that appellant committed the extraneous acts. Moreover, the extraneous offense evidence was admitted for all purposes. *See Hammock*, 46 S.W.3d at 895.

The trial court's error, if any, did not vitally affect appellant's defensive theory or make the State's case clearly and significantly more persuasive. As the State pointed out during closing arguments, there were reasons outside of the extraneous offense evidence to disbelieve appellant's theory. With respect to Bell, although appellant claims he purchased the stolen jewelry from the realtor who showed Bell's home, the realtor testified that the only face-to-face contact he had with appellant was the approximately four-hour period which included the showing. Moreover, the jury could have reasonably concluded that since appellant left Bell and the realtor to take another look at the home and later pawned Bell's property, appellant was the person who removed Bell's property from her home. With respect to Lock, the jury could have relied on Lock's realtor's testimony regarding the open house, the entry by an unknown person, and the inferences drawn from appellant's pawning of Lock's property in concluding that appellant committed the burglary of Lock's home.

14

We conclude that the charge, even if erroneous, did not deprive appellant of a fair trial or make the prosecution's case clearly and significantly more persuasive. Appellant's third issue is overruled.

## V.    COURT COSTS

By his fourth issue, appellant complains that the evidence is insufficient to support the trial court's order for appellant to pay $244.00 in court costs included in the judgment in cause number F-1251946-V.   Appellant argues that the clerk's record filed in this case does not include a proper bill of costs and that there is no indication that the bill of costs were ever filed in the trial court or brought to the attention of the trial court.   In response, the State argues that the bill of costs, provided and signed by the district clerk, meets the requirements of the Texas Code of Criminal Procedure.

The Court of Criminal Appeals recently issued a "roadmap" for criminal cases regarding questions of court costs.[4]   *See Johnson v. State*, 423 S.W.3d 385, 388 (Tex. Crim. App. 2014).   The court held, in relevant part:   (1) a claim with respect to the basis of court costs need not be preserved at trial to be raised for the first time on appeal; (2) a record on appeal can be supplemented with a bill of costs; (3) a bill of costs need not be in the record to support a particular amount of court costs; and (4) the fact that most court costs are mandated by statute dispenses with the need for an ordinary sufficiency review. On appeal, we review the assessment of court costs to determine if there is a basis for the cost, not to determine if there was sufficient evidence offered at trial to prove each cost.   *Id.* at 390.

---

[4] Appellant concedes in his reply brief that *Johnson* is likely dispositive of the court costs issue. *See Johnson v. State*, 423 S.W.3d 385, 388 (Tex. Crim. App. 2014).

The clerk's record contains a document titled "bill of costs certification" and is comprised of four pages. The first page contains the seal of the District Clerk of Dallas County certifying that the document is a true and correct copy. It is signed by the deputy clerk. The next two pages list the itemized court costs that accrued in appellant's case and the payments received. The fourth page explains the abbreviations used throughout the document. Thus, the document contains the items of cost, is signed by an officer who is entitled to receive payment for the cost—the Dallas County District Clerk—and is certified by an officer of the court.

The document contained in the record is a bill of costs for the purposes of chapter 103 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ART. 103.001–.006; *Johnson*, 423 S.W.3d at 393. The amount reflected in the "bill of costs certification" is the same amount the trial court ordered in the judgment. *See Johnson*, 423 S.W.3d at 395–96 (observing that although bill of costs is not required to sustain statutorily authorized and assessed court costs, it is the most expedient, and therefore, preferable method). We overrule appellant's fourth issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of June, 2015.